147 F.3d 1155
 28 Envtl. L. Rep. 21,317, 98 Cal. Daily Op.
Serv. 5305,
98 Daily Journal D.A.R. 7452
 KETTLE RANGE CONSERVATION GROUP, a non-profit corporation;
Inland Empire Public Lands Council, a non-profit
corporation; Northwest Ecosystem Alliance, a non-profit
corporation, Plaintiffs-Appellants,
v.
U.S. FOREST SERVICE, an agency of the United States,
Defendant-Appellee.
 No. 96-36100.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 2, 1997.
Decided July 6, 1998.
 
 Todd True (argued), Yuki Ishizuka (briefed), Sierra Club Legal Defense Fund, Seattle, Washington, for the plaintiffs-appellants.
 Lisa Jones, United States Department of Justice, Washington, DC, for the defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Washington; Wm. Fremming Nielsen, Chief District Judge, Presiding. D.C. No. CV-95-00357-WFN.
 Before: REAVLEY,* BOOCHEVER and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 The issue in this case is whether the Forest Service abused its discretion regarding the scope of a supplement to an environmental impact statement.
 
 Facts
 
 2
 In 1990, the Forest Service began studying the feasibility of conducting timber sales in 29,600 acres of the Colville National Forest in northeastern Washington. In 1992, after nearly two years of study and public meetings, the Forest Service completed a draft environmental impact statement. After more public comment, the Forest Service published a final environmental impact statement in March of 1993.[1] The Forest Service decided to allow two timber sales, which would harvest 8 million board feet from about 1500 acres scattered throughout the study area.
 
 
 3
 Forest fires have frequently occurred within much of the area of the study. The environmental impact statement says "Much of this area historically had low intensity, high frequency fires. Large areas in the north portion of the analysis area and along the Kettle Crest show evidence of high intensity fires." One of these fires, the Copper Butte Fire, occurred subsequent to publication of the environmental impact statement. It was started by lightning, and burned in about 10,000 acres, including 133 acres of the proposed timber harvest area.
 
 
 4
 After the fire, the Forest Service prepared a supplement to the environmental impact statement, evaluating what if any changes should be made on account of the fire. The Forest Service decided that there ought to be a salvage sale of burned over areas. Among its considerations was that "additional mortality is expected as a result of insects infesting damaged trees." The Forest Service proposed a timber salvage harvest from 1,084 acres, overlapping the area which is the subject of this lawsuit. "The Forest Service intends to harvest only dead and dying trees, or those so severely stressed that they are likely to be attacked and killed by bark beetles in the near future."
 
 
 5
 The Forest Service also decided to change the previously planned sale for which the final environmental impact statement had been issued. It decided to exclude a previously included harvest unit consisting of "unburned green timber located within the burn area ... for watershed protection." The supplement also modified some previously designated harvest units to protect streams.
 
 
 6
 One of the appellant environmental advocacy groups, Kettle Range Conservation Group, requested that the Forest Service meet with it to "revisit and discuss" additional harvest areas. The Forest Service rejected the request, explaining that the specified areas were "outside the scope because this analysis is concerned with the changed conditions associated with the East Curlew Creek Timber Sales [environmental impact statement] as a result of the Copper Butte Fire. The fire did not change [the areas in contention] or the analysis of effects provided by the East Curlew Creek [final environmental impact statement] regarding those portions of the sales." That decision is the focus of this appeal. The appellants, all environmental advocacy groups, argue that the Forest Service did not give a sufficiently hard look at the sale from the viewpoint of how the fire should affect it because of non-sale areas that had been burned.
 
 
 7
 The advocacy groups appealed the Forest Service's decision to adopt the supplement. Their administrative appeal was denied on July 11, 1995. They then sued in federal district court for declaratory judgment and injunctive relief. The district court granted summary judgment in favor of the Forest Service, and the advocacy groups appeal. They do not claim that there was any inadequacy in the final environmental impact statement. Their attack is on the adequacy of the supplement prepared after the forest fire.
 
 Analysis
 
 8
 A circuit court lacks authority to decide which timber ought to be sold, and which left in place. The Forest Service decides that. All we do is review the environmental impact statement, or in this case the supplement, to determine whether the Forest Service gave the proposed sale the required "hard look." Our scope of review does not enable us to decide whether we would have given the same hard look and reached the same conclusion. "[W]e must defer to the 'informed discretion of the responsible federal agencies,' " and "as long as the Corps' decision not to supplement the FEISS was not 'arbitrary or capricious,' it should not be set aside." Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). See also Laguna Greenbelt v. United States Department of Transportation, 42 F.3d 517, 530 (9th Cir.1994). A fortiori, where the Forest Service has decided to supplement the final environmental impact statement because of the subsequent event, its decision about the scope of supplementation must be reviewed under the arbitrary or capricious standard.
 
 
 9
 The advocacy groups argue that the final supplemental environmental impact statement "contains no analysis of how the fire changed the environmental impacts of proceeding with the unburned portions of the Alec and Santim timber sales, nor does [it] contain any analysis of how the fire affected the original decision to proceed with the sales." We cannot square that assertion with what the document says. The entire supplemental document is an evaluation of how the fire should affect the proposed sale, even though most of the sale area was unburned. Several changes, referred to above, are made within the sale area because of the fire that burned mostly outside the sale units. At best, the attack is an overly aggressive inference from the language the Forest Service used rejecting their request, because the specified areas were "outside the scope." The Forest Service rejection of the advocacy groups' position cannot fairly be characterized as a failure to analyze it.
 
 
 10
 Appellants would have us read the "outside the scope" statement to imply that the Forest Service never considered how the fire's effect on the areas outside the sale area might affect desirability of cutting trees within the sale area. But that is neither what the supplement says nor what it does. The supplement says that the fire "did not change ... the analysis of effects provided." That means the Forest Service considered the entire area of the fire and considered how it affected the entire area of the sale. It is plain that it did so, because, as a result of the fire, which was largely outside the sale area, the Forest Service reduced the harvest of green timber, added harvest of burned timber, and added harvest of timber subject to beetle infestation because of the fire.
 
 
 11
 We considered a somewhat analogous issue in Laguna Greenbelt, Inc. v. U.S. Dept. of Transp., 42 F.3d 517 (9th Cir.1994). In that case, the challenge was to failure to prepare a supplemental environmental impact statement after wildfires, rather than, as in this case, to the scope of a supplemental statement that was prepared. In Laguna Greenbelt, a federal agency had approved an eight lane highway bisecting the last significant open space in Orange County, and then decided not to supplement the environmental impact statement after wildfires swept through the area. We held that the decision not to supplement was not arbitrary and capricious, because the agency had relied on "substantial technical expertise" and the initial environmental impact statement had taken into account the effects of the natural fires in the area. Id. at 529-530.
 
 
 12
 Likewise in this case, the environmental impact statement analyzed the significance of the frequent fires in the area. What distinguishes this case from Laguna is that a supplemental statement was prepared. That distinction weakens appellants' claim. Here the challenge is not to the failure to prepare a supplement after the fire, just to the scope of the supplement that considered the subsequent fire. The decision about how to weigh the effects of the fire on the sale implicates substantial agency expertise and was not arbitrary or capricious.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the 5th Circuit, visiting judge
 
 
 [1]
 We are aware that specialists in environmental law use acronyms, such as FEIS, instead of English words, such as "final environmental impact statement." Acronyms facilitate error by obscuring meaning. We therefore use English